ANTHONY M. LA PINTA, ESQ. (AML-6505)
Reynolds, Caronia, Gianelli & La Pinta, P.C.
*Attorneys for Plaintiffs ERIN WHELAN,*
*SARAH E. GARCIA, DANIELLE A. READ,*
*PATRICK B. ODIERNA and BRENDON S. LAFFERTY*
200 Vanderbilt Motor Parkway, Suite C-17
Hauppauge, New York 11788
(631) 231-1199

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
ERIN WHELAN, SARAH E. GARCIA, DANIELLE A.
READ, PATRICK B. ODIERNA and BRENDON S.
LAFFERTY,

                    Plaintiffs,

        -against-

COUNTY OF NASSAU, LIEUTENANT JAMES
BROWN # 8143,  SERGEANT FRANK DISCALA
#8367, LIEUTENANT RONALD W. GIUMENTA,,
LIEUTENANT THOMAS J. MCGOWAN, POLICE
OFFICER ROBERT D. GALGANO, POLICE
OFFICER DANIEL P. CONCANNON, POLICE
OFFICER JEREMY SEPULVEDA #9425, FIRE
MARSHAL JOHN B. KELLEHER, JR., POLICE
OFFICER ALEXANDER Shield #9422 (First Name
Unknown), POLICE OFFICER DILENA Shield #9352
(First Name Unknown) and JOHN AND JANE DOES
1-13,

                    Defendants.
--------------------------------------------------------------------X

Civil Case No.: 19 - cv - 82

**COMPLAINT**

Jury Trial Demanded

       Plaintiffs, ERIN WHELAN, SARAH E. GARCIA, DANIELLE A. READ, PATRICK B.

ODIERNA and BRENDON S. LAFFERTY, by their attorney, ANTHONY M. LA PINTA, ESQ.,

respectfully allege as follows:

**PRELIMINARY STATEMENT**

    1. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth, Eighth

and Fourteenth Amendments to the United States Constitution, Due Process and the Constitution and laws of the State of New York.

2. Jurisdiction of this action is founded upon 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983 as this is a civil action arising under the United States constitution and the laws of the United States to redress deprivation of constitutionally and statutorily protected rights and interests under color of state law.

3. The incidents giving rise to this lawsuit occurred in the State of New York, County of Nassau.

4. Venue it proper in this district pursuant to 28 U.S.C. § 1391.

5. New York CPLR § 1601 does not apply pursuant to the exception provided by CPLR § 1602(1)(b).

## PARTIES

6. At all times hereinafter mentioned, plaintiffs ERIN WHELAN, SARAH E. GARCIA, DANIELLE A. READ, PATRICK B. ODIERNA and BRENDON S. LAFFERTY were and continue to be citizens of the United States of America and residents of Counties within the Eastern District of the State of New York.

7. At all times hereinafter mentioned, defendant COUNTY OF NASSAU was and continues to be a duly constituted municipal corporation of the State of New York existing and operating under and by virtue of the laws of the State of New York and the County of Nassau and is the employer of the defendant officers herein.

8. At all times hereinafter mentioned, NASSAU COUNTY POLICE DEPARTMENT was and continues to be an agency of defendant, the COUNTY OF NASSAU. Defendant COUNTY OF NASSAU is responsible for the policies, practices and customs of the Nassau County Police Department and the Nassau County Fire Marshal's Office as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers, fire marshals and civilian employees.

9. Defendants LIEUTENANT JAMES BROWN, LIEUTENANT RONALD W. GIUMENTA, LIEUTENANT THOMAS J. MCGOWAN, SERGEANT FRANK DISCALA, POLICE OFFICER ROBERT D. GALGANO, POLICE OFFICER DANIEL P. CONCANNON, POLICE OFFICER JEREMY SEPULVEDA, POLICE OFFICER ALEXANDER, Shield #9422 (First Name Unknown) and POLICE OFFICER DILENA, Shield # 9352 (First Name Unknown) were at all relevant times police officers and employees of the defendant COUNTY OF NASSAU and members of the Nassau County Police Department and further, at all relevant times acted under color of state law and within the scope of their employment. They are being sued in their official and individual capacities.

10. Defendant JOHN B. KELLEHER, JR., was at all relevant times a fire marshal and employee of the defendant COUNTY OF NASSAU and Nassau County Fire Marshal's Office and at all relevant times acted under color of State Law and within the scope of his employment. He is being sued in his official and individual capacity.

11. At all times hereinafter mentioned, defendants JOHN and JANE DOE 1 - 10 are fictitious names representing presently unidentified employees of the Nassau County Police Department whose identities are known to the defendants NASSAU COUNTY and NASSAU

COUNTY POLICE DEPARTMENT. Plaintiffs intend to name individual "JOHN" and "JANE" DOES after learning their true identities. All DOE defendants participated in some or all of the acts complained of herein, acting under color of state law and within the scope of their employment. These DOE defendants are being sued in their individual and official capacities. Leave of Court will be sought to amend the complaint to include the true names and capacities of the JOHN and JANE DOES as soon as such information becomes known to the plaintiffs.

## FACTUAL AND GENERAL ALLEGATIONS

12. That Meetball Place Too (hereinafter "Meetball") is a public restaurant serving beer, cider, wine and liquor with recorded and live bands and acoustic music. It is licensed by the New York State Liquor Authority and has its principal place of business is 206 Main Street, Farmingdale, Nassau County, New York.

13. On or about November 25, 2017 and into the early morning hours of November 26, 2017 and all times mentioned herein Plaintiffs ERIN WHELAN, SARAH E. GARCIA, DANIELLE A. READ, PATRICK B. ODIERNA and BRENDON S. LAFFERTY were lawfully employed by That Meetball Place Too, as bartenders.

14. The days immediately preceding and following Thanksgiving are amongst the busiest business days for establishments such as "Meetball" in the Long Island area. Defendants were aware of this.

15. Saturday, November 25, 2017 directly followed the Thanksgiving holiday.

16. The individual named police officers and the JOHN and JANE DOE police officers acting under the over all supervision of defendants LT. BROWN and SGT. DISCALA assisted each other in performing the various actions at "Meetball" hereinafter described and lent their

4

physical presence, support and the authority of their respective offices during such actions. At no time did any of the defendants intervene in the illegal and unconstitutional actions of their fellow officers against the plaintiffs.

17. On November 25, 2017 at or about 11:20 p.m. approximately 10 or more Nassau County police officers under the supervision of defendant LIEUTENANT JAMES BROWN and SGT. FRANK DISCALA entered "Meetball" purportedly to conduct a license premise check (hereinafter SLA check). Similar such checks at "Meetball" had been conducted since the establishment opened, far more than any other similar establishment in the Farmingdale area.

18. Upon information and belief defendant LT. BROWN was assigned to the police department's Criminal Intelligence Rapid Response Team (CIRRT), and defendant SGT. DISCALA was assigned to the Community Oriented Policing and Enforcement Unit (COPE).

19. Employees of American Protection Bureau Inc. were at the front and rear entrance doors to "Meetball" checking for proper patron identifications and to insure capacity requirements. "Meetball" did possess and file with the State Liquor Authority the required security license and agreement to hire these security guards and were in full compliance with the General Business Law of the State of New York.

20. With knowledge that November 25 and 26, 2017 were important days in so far as the profitability of "Meetball" and the plaintiff bartenders who rely in part on tips from patrons, the defendants targeted "Meetball" knowing full well that patrons already in the establishment would leave and those patrons who planned on entering the establishment would not enter because of the significant police presence outside and inside "Meetball".

21. The defendant police officers, who numbered approximately 10, entered "Meetball" and immediately announced their presence and displayed their police badges to the patrons and plaintiffs and began to search upstairs and downstairs bars, and the liquor bottles behind the bars purportedly for illegal or contaminated bottles of liquor or other violations of law.

22. Patrons immediately left the premises voluntarily or were ordered to leave. Other patrons were denied entry into "Meetball" by the defendants.

23. At the direction of defendant LT. BROWN, and without legal basis, the Nassau County Fire Marshal's Office was contacted and a member of that office was requested to respond to check and insure that the capacity requirements were being met.

24. Defendant KELLEHER, an agent of the Nassau County Fire Marshal's Office, responded to "Meetball" during the events on November 25 - 26, 2017. The manager of That Meetball Place Too, Ralph Reale, was immediately confronted by defendant LT. BROWN who verbally abused and cursed him and ordered him placed under arrest by defendant SEPULVEDA at approximately 11:20 pm at a time when the SLA check was in progress. There was no probable cause for such arrest. KELLEHER did not make a true and accurate count and relied solely on a fictitious count of the number of patrons that defendants BROWN and DISCALA claimed to have done.

25. Reale was later charged with a violation of General Business Law§ 70(2) alleging a failure to possess the necessary documentation to lawfully hire security guards, this despite the fact that That Meetball Place Too had a properly executed agreement with American Protection Bureau Inc. which actually hired the security personnel at the bar. That charge was later dismissed by the Nassau County District Attorney's Office. Reale was also falsely charged by

defendant KELLEHER with overcrowding in violation of § 13.9 of the Nassau County Fire Prevention Ordinance.

26. While under arrest and placed in a police van to await transport to a Nassau County Police Department precinct, Mr. Reale over-heard defendant BROWN state to the other defendant police officers present to "go in and fuck this place up."

27. During the State Liquor Authority check, the defendant police officers under the supervision of LT BROWN and SGT. DISCALA falsely claimed that all the plaintiff bartenders claimed to have premixed Sangria, Strawberry Infused Tequila and Pinot Grigio Apple Cinnamon Stick Liquor. None of the plaintiffs had done so and there was no pre-mixed infused tequila with Pinot Grigio.

28. The police officers also falsely claimed to have observed insects inside a bottle of Jim Bean Vanilla and a bottle of Creme de Caco and declared the bottles contaminated.

29. None of the bottles claimed by the defendants to have insects inside of them and contaminated were taken for forensic analysis nor were the bottles photographed, or even opened for content analysis to evidence insect infestation or contamination. Defendants left the bottles behind the bars for future consumption.

30. Defendant BROWN ordered plaintiffs to produce their New York State driver's license while they were still behind the bars. When plaintiffs requested an opportunity to get their licenses from their lockers or automobiles, LT. BROWN falsely claimed that the plaintiffs were required by law to have their license on their person whenever they were behind the bar and serving liquor and could be arrested for failure to have their license on their person. Upon information and belief this statement is untrue.

31. Despite any probable cause to arrest, or proof of any violations of the law, plaintiffs were told by defendant LT. BROWN, in words or substance, that the plaintiffs could be given appearance tickets and allowed to remain at liberty but he (LT. BROWN) was going to have them arrested and taken to jail.

32. Knowing full well that each plaintiff was employed by "Meetball" as a bartender and none were a retail liquor licensee, the plaintiffs were arrested under the orders of LT. BROWN and at the direction of SGT. DISCALA despite the fact no warrant was obtained, no exigent circumstances existed to necessitate the arrests and no probable cause or legal basis existed to believe that plaintiffs were in fact guilty of any crime. No plaintiff consented to this arrest.

33. Each of the remaining police officer defendants failed and refused to intercede on behalf of the plaintiffs knowing full well that the constitutional and statutory rights of the plaintiffs were being violated.

34. LT. BROWN then ordered all plaintiffs to remove all of their personal property and had defendant police officers under his and defendant SGT DISCALA's supervision handcuff and escort each defendant out the back door, and further ordered them to stand against a wall and searched in full view of patrons and other employees of "Meetball".

35. After being handcuffed, arrested and searched in the presence of members of the public the plaintiffs were placed in the police van which manager Mr. Reale was already in and transported to Nassau County Police Department Second Precinct.

36. At the precinct the male plaintiffs were placed in a cell and handcuffed to a wall.

37. The female plaintiffs were handcuffed to a wall in a squad room.

38. The plaintiffs overheard defendant BROWN loudly ordering the female plaintiffs to be searched individually knowing full well that they had already been searched in the rear of "Meetball" for allegedly violating a section of the Alcoholic Beverage Control Law disallowing the premixing of alcohol. A defendant female police officer told defendant LT. BROWN that she had already searched the female plaintiffs at the rear of "Meetball" in defendant BROWN's presence.

39. That same female police officer whose identity is presently unknown approached the female plaintiffs but did not immediately begin to physically search the plaintiffs.

40. Defendant BROWN reentered the squad room and ordered the female police officer in a loud voice to "fucking search them" without any reasonable suspicion or cause to believe that the female plaintiffs were carrying or concealing drugs, weapons or contraband or any other evidence of a crime. The female police officer knowing full well that the female plaintiffs constitutional rights were being violated did not intercede or refuse to conduct the searches.

41. The sole reason for the search was to humiliate the female plaintiffs and cause them emotional distress, mental anguish and embarrassment.

42. Each female plaintiff was taken to a bathroom by the female police officer while handcuffed behind the back, told to face the bathroom wall and not to move, uncuffed, ordered to take off their footwear, ordered to unbutton their jeans, and lift up their shirt or blouse and bra. Each female plaintiff was then searched against their will causing them to suffer further emotional distress, mental anguish, humiliation and embarrassment.

43. While each female plaintiff was being searched in the manner described above the bathroom door was ajar and LT. BROWN was standing by the doorway of the bathroom.

44. After being searched each female plaintiff was ordered to take down their pants and urinate, all against the will of each plaintiff and with LT. BROWN still standing by the open bathroom door causing plaintiffs to suffer further emotional distress, mental anguish, humiliation and embarrassment.

45. After each female plaintiff was individually searched in the manner described above she was brought back to the squad room and re-handcuffed to the wall.

46. No contraband was found on any of the plaintiffs.

47. No female plaintiff acted in any manner to cause the defendants to believe that they or others were in jeopardy of physical harm.

48. None of the male bartenders were searched a second time.

49. After pedigrees were taken, defendants BROWN, DISCALA and other defendants attempted over and over to figure out what charge should be preferred against the plaintiffs despite the fact that the plaintiffs had already been detained, seized and arrested for a number of hours. Plaintiffs were booked by defendants DILENA Shield # 9352 and ALEXANDER Shield # 9422.

50. The defendants BROWN, GIUMENTA, MCGOWAN, DISCALA, GALGANO, CONCANNON and SEPULVEDA ultimately conferred and charged all plaintiffs with violating § 106 of the Alcoholic Beverage Control Law for allegedly premixing Sangria, Strawberry Infused Tequila and Pinot Grigio Apple Cinnamon Stick liquor knowing full well that this law

applies only to retail licensees in so far as criminal liability is concerned and not to employees such as plaintiffs herein.

51. The plaintiffs were ultimately given appearance tickets signed by defendant LT BROWN to appear in the First District Court, Hempstead on January 8, 2018.

52. District Court informations charging plaintiffs READ, LAFFERTY and GARCIA falsely with the violations of Alcoholic Beverage Control Law § 106-2(A) were signed by defendant CONCANNON and subscribed and sworn to before defendant GIUMENTA.

53. District Court informations charging plaintiffs ODIERNA and WHELAN falsely with the violations of Alcoholic Beverage Control Law § 106-2(A) were signed by defendant GALGANO and subscribed and sworn to before defendant GIUMENTA.

54. A District Court information charging plaintiff WHELAN with the very same crime in the exact language as described in paragraph 52 above was signed by defendant GALGANO and subscribed and sworn to before defendant McGOWAN.

55. On January 22, 2018 the plaintiffs were arraigned in Nassau County First District Court and given future dates to appear for conference and trial.

56. Arrest narratives containing false facts to support the illegal arrests were prepared by defendant DILENA, Shield # 9352.

57. The accusatory instrument charging each plaintiff with violation of § 106A of the Alcoholic Beverage Control Law was dismissed upon motion of the Nassau County District Attorney's Office on August 7, 2018 thus terminating the prosecution in the plaintiffs favor.

58. Due to the actions of these defendants each plaintiff was seized, searched and unlawfully arrested, charged with criminal activity, falsely imprisoned, maliciously prosecuted and their rights to due process violated.

59. Each plaintiff suffered and continues to suffer from emotional distress, anxiety, embarrassment, humiliation and monetary loss.

60. Defendant KELLEHER acting in concert with defendant BROWN prepared an accusatory instrument falsely claiming that the subject premises were overcrowded on November 26, 2017 at 01:15 am. That charge was also dismissed by the Nassau County District Attorney's Office.

61. Defendant CONCANNON acting in concert with defendant BROWN prepared an accusatory instrument falsely claiming that certain bottles of liquor namely Jim Beam Vanilla, Creme de Cacao Liquor and both pre-mixed bottles of Strawberry Infused tequila were contaminated. The liquor was never tested for contamination nor were the bottles opened, tasted or taken for analysis to evidence contamination.

62. The District Attorney of Nassau County moved to dismiss this accusatory instrument on January 4, 2019.

63. The fact that all accusatory instruments prepared by defendants were dismissed is further evidence of the wilful and malicious actions of the defendants.

64. After learning that the criminal proceedings against all plaintiffs had been dismissed by the Court upon motion of the Nassau County District Attorney's Office on August 7, 2018 defendant BROWN continued his campaign of selective enforcement and harassment and commenced to conduct another license premise check during the Thanksgiving week of 2018.

65. On November 15, 2018, at approximately 10:45 p.m., knowing full well that this is one of the busiest days for the restaurant and tavern business, defendant BROWN and approximately 10 Nassau County Police officers, some in uniform and some in plain clothes, entered "Meetball", announced their police presence, displayed police badges to those plaintiffs then working and patrons and began to search upstairs and downstairs bar. LT. BROWN demanded to see the liquor license. With the large police presence patrons left the establishment.

66. Defendant BROWN knew full well that "Meetball" had a legal liquor license. Defendant BROWN's actions were a pretense to further harass, intimidate and humiliate plaintiffs while causing patrons to leave and pecuniary loss to be incurred.

67. The actions of LT BROWN and the Nassau County Police Department further evidence a complete and utter disregard for the equal protection clause of the United States Constitution by selectively harassing "Meetball" and plaintiffs with baseless license checks, false charges, false business and occupancy charges in an effort to cause patrons to frequent other similar establishments in proximity to "Meetball" and ultimately cause "Meetball" to go out of business and plaintiffs to lose gainful employment.

68. Such conduct of LT. BROWN further evidences his malice toward plaintiffs and "Meetball".

13

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## 42 U.S.C. § 1983 - FALSE ARREST

## AS TO ALL DEFENDANTS

69. Plaintiffs repeat, reiterate and reallege paragraphs 1 through 68 as if fully set forth herein.

70. Defendants intended to and did seize, detain and confine plaintiffs when they arrested them, removed them from their place of employment, searched them, handcuffed them all without any legal justification, transported them to a precinct and searched the female plaintiffs again.

71. None of the plaintiffs consented to their seizure, arrest, search or confinement.

72. Defendants acted with malice, without a warrant or any reasonable basis to believe that any plaintiff was guilty of committing a crime which could justify an arrest or detention under the laws of the State of New York.

73. The plaintiffs were subjected to unreasonable force under the circumstances without any reason to believe that any of the defendants or others were in jeopardy of physical harm.

74. The defendants' acts were the proximate cause of damages sustained by the plaintiffs.

75. By reason of the false arrest and seizure, each plaintiff incurred emotional harm, humiliation, mental anguish, embarrassment and pecuniary loss.

76. The acts of the defendants were intentional and with malice and warrant and justify the assessment and award of punitive damages.

77. As a consequence plaintiffs have been damaged in an amount to be determined at trial, including punitive damages, costs and an award of attorney's fees is appropriate pursuant to 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION

## 42 U.S.C. § 1983 - FALSE IMPRISONMENT

## AS TO ALL DEFENDANTS

78. Plaintiffs repeat, reiterate and reallege paragraphs 1 through 77 as if fully set forth herein.

79. Defendants intended to and did confine each of the plaintiffs when they were arrested, removed from their place of employment, transported to a precinct and either handcuffed to a wall or placed in a cell against their will and without legal justification.

80. Defendants knew that none of the plaintiffs committed a crime, did not have probable cause to believe any plaintiff committed a crime and the plaintiffs confinement was without privilege or justification.

81. Defendants BROWN, DISCALA, SEPULVEDA, GALGANO and other presently unknown defendants arrested plaintiffs.

82. By reason of the false arrest and seizure, each plaintiff incurred emotional harm, humiliation, mental anguish, embarrassment and pecuniary loss.

83. The defendants acts were the proximate cause of damages sustained by the plaintiffs.

84. The actions of the defendants warrant and justify the assessment and award of punitive damages.

85. As a consequence, plaintiffs have been damaged in an amount to be determined at trial, including punitive damages, costs and an award of attorney's fees is appropriate pursuant to 42 U.S.C. § 1988.

## THIRD CAUSE OF ACTION

## 42 U.S.C. § 1983 - MALICIOUS PROSECUTION

## AS TO ALL DEFENDANTS

86. Plaintiffs repeat, reiterate and reallege paragraphs 1 through 85 as if fully set forth herein.

87. The defendants described above initiated criminal proceedings against each plaintiff, falsely charging each plaintiff with violating § 106.2A of the Alcoholic Beverage Control Law, with malice and without probable cause to believe any plaintiff committed the charged violation.

88. The defendants initiated the criminal proceeding against each plaintiff with complete disregard for the rights of each plaintiff and without any reasonable basis to believe that the plaintiffs had committed the crime for which they were charged.

89. The plaintiffs were required to attend court conferences for months until the criminal proceedings against each plaintiff were terminated in their favor on August 7, 2018 upon the motion of the Nassau County District Attorney's Office.

90. By reason thereof, each plaintiff incurred emotional harm, humiliation, mental anguish, embarrassment and pecuniary loss.

91. The defendants' acts were the proximate cause of damages sustained by the plaintiffs.

92. The actions of these defendants were intentional and warrant and justify the assessment and award of punitive damages.

93. As a consequence plaintiffs have been damaged in an amount to be determined at trial, including punitive damages, costs and an award of attorney's fees is appropriate pursuant to 42 U.S.C. § 1988.

## FOURTH CAUSE OF ACTION

### 42 U.S.C § 1983 - ILLEGAL SEARCH

### AS AGAINST DEFENDANT BROWN and DEFENDANT "JANE" DOE

94. Plaintiffs repeat, reiterate and reallege paragraphs 1 through 93 as if fully set forth herein.

95. Defendant LT. BROWN and POLICE OFFICER "JANE" DOE violated plaintiffs WHELAN, GARCIA and REED's rights to physical liberty, bodily integrity, privacy and freedom from unreasonable search and seizure when, without their consent. LT. BROWN ordered Officer "JANE" DOE to search them a second time without any reasonable basis and in an unreasonable manner.

96. Defendant POLICE OFFICER "JANE" DOE had previously searched the female plaintiffs and conducted this second illegal search.

97. There was no reasonable suspicion or probable cause to believe that drugs, weapons, contraband of any kind or any other evidence of a crime would be found on the plaintiffs' persons.

98. Defendants BROWN and POLICE OFFICER "JANE" DOE conducted this unreasonable search with actual malice and in an excessively unreasonable and intrusive manner

designed to further humiliate and embarrass the plaintiffs and cause them to suffer emotional distress, anxiety and humiliation.

99. The actions of these defendants were intentional and warrant and justify the assessment and award of punitive damages.

100. As a consequence, plaintiffs WHELAN, GARCIA and REED have been damaged in an amount to be determined at trial, including punitive damages, costs and an award of attorney's fees is appropriate pursuant to 42 U.S.C. § 1988.

## FIFTH CAUSE OF ACTION

### 42 U.S.C. § 1983 - FAILURE TO INTERCEDE

### AS TO ALL DEFENDANTS

101. Plaintiffs repeat, reiterate and reallege paragraphs 1 through 100 as if fully set forth herein.

102. The defendants and each of them violated the Eighth Amendment to the United States Constitution by virtue of their failure to exercise their affirmative duty to intercede on behalf of plaintiffs knowing full well that the plaintiffs' Constitutional rights were being violated by other police officers and fire marshals in their presence.

103. The defendants observed or had reason to know that Constitutional violations of false arrest, false imprisonment, malicious prosecution and unreasonable searches of the plaintiffs were being committed these defendants had reasonable opportunity to intervene and prevent harm to plaintiffs from occurring and failed and refused to do so.

104. The defendants' acts were the proximate cause of damages sustained by the plaintiffs.

105. The actions of these defendants were intentional and warrant and justify the assessment and award of punitive damages.

106. As a consequence, plaintiffs have been damaged in an amount to be determined at trial, including punitive damages, costs and an award of attorney's fees is appropriate pursuant to 42 U.S.C. § 1988.

## SIXTH CAUSE OF ACTION

### MONELL LIABILITY AGAINST COUNTY OF NASSAU

107. Plaintiffs repeat, reiterate and reallege paragraphs 1 through 106 as if fully set forth herein.

108. Defendant COUNTY OF NASSAU, acting through the Nassau County Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, lawful search of individuals and/or their properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest and prosecution.

109. Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

110. Upon information and belief after learning of their employees' violations of plaintiffs' Constitutional rights, the defendant COUNTY OF NASSAU failed to investigate the wrongdoing, failed to remedy the wrong, failed to discipline the defendants thereby being grossly negligent in managing subordinates and allowed such policies and customs to exist.

19

111. Defendant COUNTY OF NASSAU maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. After learning of their employees' violations of the plaintiffs' Constitutional rights and the dismissal of the charges and termination of the prosecution in plaintiffs' favor, the COUNTY OF NASSAU and its police department failed to investigate or take any corrective action to prevent future occurrences, thus the defendant acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiffs's injuries as described herein. By reason of the foregoing plaintiffs and each of them have been damaged.

112. As a consequence plaintiffs have been damaged in an amount to be determined at trial, including punitive damages, costs and an award of attorney's fees is appropriate pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs request the following relief jointly and severally as against all the defendants:

1. A trial by jury on all issues;

2. An award of compensatory damages in an amount to be determined at trial;

3. An award of punitive damages in an amount to be determined at trial;

4. Disbursements, costs, and attorneys' fees pursuant to 42 U.S.C. § 1988; and

5. Such other and further relief as this Court may deem just and proper.

Dated: Hauppauge, New York
January 4 , 2019

Yours, etc.,

ANTHONY M. LA PINTA, ESQ. (AML-6505)
Reynolds, Caronia, Gianelli & La Pinta, P.C.
*Attorneys for Plaintiffs*
*ERIN WHELAN, SARAH E. GARCIA,*
*DANIELLE A. READ, PATRICK B. ODIERNA*
*and BRENDON S. LAFFERTY*
200 Vanderbilt Motor Parkway, Suite C-17
Hauppauge, New York 11788
(631) 231-1199